UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEMPERATURE SERVICE COMPANY, INC., AND SSV PARTNERS, LLC<br><br>PLAINTIFFS,<br><br>v.<br><br>ACUITY, A MUTUAL INSURANCE COMPANY<br><br>DEFENDANT. | No. 16 C 2271<br><br>Judge Thomas M. Durkin |

## MEMORANDUM OPINION AND ORDER

Defendant Acuity, a mutual insurance company, moves this Court for entry of summary judgment in its favor. R. 22. Though discovery in the matter is not yet complete, R. 16, Acuity argues based on a single response to interrogatories that the declaratory judgment and breach of contract claims brought by Plaintiffs Temperature Service Company, Inc. and SSV Partners, LLC fail as a matter of law. For the reasons that follow, Acuity's motion is denied.

### Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere

1

scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**Background**

The Plaintiffs' commercial property[1] in Elk Grove, Illinois was insured by Acuity from January 1, 2013 to January 1, 2014. R. 29 (Pls.' R. 56.1 Response) ¶ 4. The commercial building on the property was constructed in or around 1980. R. 29 ¶ 10. In August 2013, Plaintiffs excavated around the building for the construction of a storage addition. *Id.* ¶ 7. During the excavation process, Plaintiffs discovered that the soil around and under the insured property contained "urban backfill"— construction debris, asphalt, concrete and other man-made materials that cause "differential settlement" of the earth. *Id.* ¶ 8. In October 2013, Plaintiffs retained a consultant to perform a subsurface soil investigation of the premises. R. 31 (Def. R. 56.1 Reply) ¶ 1. The consultant documented cracks in the building foundation, steps and drywall, as well as damage to the window frames and doors. *Id.* ¶ 2. A third-party contractor then conducted an engineering and geotechnical investigation of the premises, which revealed, among other damage, cracks in the exterior masonry. *Id.* ¶¶ 3, 5. Based on the work of the consultant and independent contractor, as well as on their own observations of the deterioration of the property, Plaintiffs contend

---

[1] The property is owned by SSV Partners and leased by Temperature Service.

2

that the urban backfill caused and continues to cause damage to the insured premises. *Id.* ¶ 9.

Plaintiff submitted a proof of loss claim to Acuity seeking coverage for stabilization measures, structural upgrades, and other property repairs. *Id.* ¶ 11. Acuity hired its own expert to investigate the insured premises in connection with Plaintiffs' claim. *Id.* ¶ 12. Following the investigation, Acuity denied coverage pursuant to certain exclusions and limitations[2] in the insurance policy. R. 1 (Complaint) and R. 11 (Answer) ¶ 8. This lawsuit followed.

During discovery, Acuity issued the following interrogatory to Plaintiffs: "State the date on which the direct physical loss you claim is covered pursuant to the Acuity policy first occurred." R. 29 ¶ 11. Plaintiffs responded:

> [Plaintiffs] object[ ] to this interrogatory on the grounds that the term "first occurred" is vague and overly broad. Without waiving said objection, due to the nature, complexity, and circumstances surrounding the type of direct physical Loss, [Plaintiffs] at this time cannot state when the direct physical loss "first occurred", but the direct physical loss is ongoing and occurred after January 1, 2013, the inception date of the Acuity policy.

*Id.* ¶ 12. "Acuity admits that the damage to the building continues to progress." R. 31 ¶ 10.

The Acuity policy insures Plaintiffs against "loss or damage commencing [d]uring the policy period . . . [w]ithin the . . . United States of America." R. 29 ¶ 5. The parties dispute the meaning of the term "commencing" within this coverage

---

[2]  Acuity does not now move for judgment on the basis of these exclusions and limitations, though absent any factual dispute, they may be amenable to disposition as a matter of law.

3

provision. According to Acuity, if the term is construed to refer to the single moment in time when all of the alleged damage to the insured property began or originated, Plaintiffs' claims fail as matter of law because Plaintiffs have not, and likely cannot, establish that the date falls within the period of coverage. The Court examines that position below.

## Discussion

The interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment. *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 818-19 (7th Cir. 2008) (quoting authority). "A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy." *Id.* at 819 (quoting authority). "In performing that task, the court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Id.* (quoting authority). Where the terms of an insurance policy are ambiguous, they will be strictly construed against the drafter. *Id.* Ambiguity exists where a provision is susceptible of more than one interpretation and "reasonably intelligent persons would honestly differ as to its meaning." *Sentinel Ins. Co., Ltd. v. Cogan*, 2016 WL 4270213, at *3 (N.D. Ill. Aug. 15, 2016) (citing *Nat'l Ben Franklin Ins. Co. of Ill. v. Calumet Testing Servs., Inc.*, 191 F.3d 456, 1999 WL 594926 at *4 (7th Cir. May 11, 1999)).

Acuity's argument is simple—because Plaintiffs concede in their interrogatory response that they do not now (and may not ever) know when,

4

precisely, the damage to the insured property "commenced" their claims fail as a matter of law. R. 23 at 4-6. In support of this argument, Acuity relies primarily on *St. Michael's Orthodox Catholic Church v. Preferred Risk Mutual Insurance Company,* 496 N.E. 2d 1176 (Ill. App. Ct. 1986), a widely-cited Illinois appellate court opinion that teaches that "the existence of coverage is an essential element of the insured's case, and the insured has the burden of proving that his loss falls within the terms of his policy." *Id.* at 1178.

*St. Michael's* involved flood damage sustained by a church over several years, including the year in which the plaintiff was insured by the defendant. The policy at issue covered only property damage "occurring" during the policy period. The court considered where the burden of proof should fall when the record—which, in that case, was fully developed in discovery and tested at trial—shows that some of the alleged damage occurred during the coverage term and some occurred beforehand. In deciding that question, the court set forth the following rule of law:

> The burden rests upon the insured to prove that his loss resulted from a peril insured against. Where part of a loss resulted from a peril insured against and part from a peril not covered by insurance, the insured must show the amount of the loss that is covered by his policy.

*Id.* at 1179. The court reasoned that because the plaintiff in that case had failed to establish the extent to which its loss fell within the scope of coverage, judgment should not have been rendered in its favor. *Id.*

While *St. Michael's* is instructive as to where the burden of proof rests in a case like this one, it says nothing about the threshold issue of determining the scope of coverage under a policy that applies to damage or loss "commencing" during the

5

policy term. The word "commence" is not defined anywhere in the Acuity policy. Merriam Webster defines "commence" simply as "to begin." Merriam Webster Dictionary Online, *available at* http://www.merriamwebster.com/dictionary/commencing (last accessed Oct. 11, 2016); *see also United States v. Alrub*, 160 F. Supp. 2d 988, 992 n. 6 (N.D. Ill. 2001) (adopting the same definition under entirely different circumstances); *Brown v. Jaimovich,* 847 N.E.2d 870, 878 (Ill. App. Ct. 2006) (citing Webster's Dictionary for the same definition).

Acuity contends that property damage alleged to share a common cause—here, the alleged presence of "urban backfill"—can only begin once, presumably at the time the topsoil at the insured premises began to settle differentially. Based on Plaintiffs' admission that "at this time[, they] cannot state when the direct physical loss 'first occurred,'" Defendants argue that Plaintiffs cannot meet the burden set forth in *St. Michaels* of establishing that the alleged damage "commenced" during the policy term. R. 23 at 6. Naturally, Plaintiffs take a different view, arguing that "[t]he Acuity policy is triggered if any one portion of the numerous claimed damages "commenced" during the policy period," implying the possibility of different commencement dates connected to each of the multiple losses claimed. R. 28 at 7.

No Illinois state court or federal court applying Illinois law has confronted this exact issue. The weight of authority from other jurisdictions, however, counsels against granting summary judgment here for at least three reasons. First, the term "commencing" is ambiguous. In *Association of Unit Owners of Nestani v. State Farm Fire and Casualty Company*, 670 F. Supp. 2d 1156 (D. Or. 2009), the court

6

considered whether the term "commencing" referred to "the first occurrence of the type of loss claimed," as advocated by the defendant-insurer, or to "each occurrence of the loss in a series of multiple losses," as argued by the plaintiff-insured. *Id.* at 1159. The court found both definitions plausible and thus construed the term against the insurer. *Id.*; *see also Kief Farmers Co-op Elevator Co. v. Farmland Mut. Ins. Co.*, 534 N.W.2d 28, 32 (N.D. 1995) (considering an identical provision and holding that because both the insured and the insurer "offered rational but different meanings for the policy coverage provision, we conclude that the provision is ambiguous"), *accord Ellis Court Apartments, Ltd. P'ship v. State Farm Fire & Cas. Co.*, 72 R.3d 1086, 1090-91 (Wash. Ct App. 2003). This Court will do so, as well. The Acuity policy may reasonably be read to include each identifiable instance of new damage or loss, regardless of whether similar damage or loss, or damage or loss with a common but chronologically distinguishable cause, commenced prior to the policy period.

Second, there is a question of fact in this case as to whether any of the alleged property damage "commenced" during the coverage period. The case of *General Star Indemnity Co. v. Sherry Brooke Revocable Trust*, 2001 WL 34063890 (W.D. Tex. Mar. 16, 2001) is instructive on this point. In *General Star*, the defendant-insured moved for summary judgment after the close of discovery on the basis of several expert reports, deposition transcripts, property repair logs, infrastructure tests, and witness affidavits. *Id.* at *13-14. On the more complete record in *General Star*, the court granted summary judgment for the insurer

7

because (1) the evidence conclusively showed that there were substantial foundation problems for many years before the policy was in effect, (2) nothing in the insurance contract indicated that the parties intended the policy to protect against losses beginning before the coverage term, and, most importantly for the purposes of this case, (3) there was no evidence that any particular damage commenced during the pendency of the policy. *Id.* Given the status of discovery in this case, the record has not been similarly developed for the Court's review. Accordingly, the Court cannot reach the conclusion here that there is no evidence of damage commencing in the coverage period. On the incomplete record in this case, Plaintiffs have minimally established that a number of parties, including experts, observed multiple types of property damage in a variety of locations on the insured premises at different times, including times falling within the policy term. Acuity concedes as much, acknowledging that "damage to the building continues to progress." Whether any new damage commenced in the coverage term cannot, at least at this time, be determined as a matter of law.

Third, fact questions in property damage cases are often resolved by weighing competing expert testimony. Take, for example, the case of *Daily Properties, LLC v. Truck Insurance Exchange*, 2006 WL 1041932 (W.D. Wash. Apr. 5, 2006), wherein the court found at the close of discovery that the plaintiff-insured had failed to conclusively establish that the alleged property damage "commenced" during the coverage period. *Id.* at *2. The court nevertheless declined to enter summary for the defendant-insurer, because doing so would "ignore[ ] the practical reality that the

resolution of the disputed factual issue[ ]," namely, the precise time the alleged loss commenced, "frequently involves a compromise between competing experts' conclusions." *Id.* In other words, weighing expert opinions may be required to determine the threshold issue of the existence of coverage. Though the burden of proof falls to Plaintiffs on that issue, they cannot be expected to carry that burden without the benefit of expert discovery.

## Conclusion

Defendant's motion for summary judgment [22] is denied. The parties are to appear on October 27, 2016 for a status hearing to inform the Court of how they wish to proceed in this matter.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: October 14, 2016