# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| TEMPERATURE SERVICE COMPANY, INC. and SVV PARTNERS, LLC, | ) ) ) | No. 16 C 2271 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Thomas M. Durkin |
| ACUITY, a Mutual Insurance Company, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION & ORDER**

In this lawsuit, plaintiffs Temperature Service Company, Inc. and SVV Partners, LLC challenge defendant Acuity's denial of insurance coverage for damage to plaintiffs' building. Acuity moves for summary judgment (R. 43), arguing that an "earth movement" exclusion in plaintiffs' insurance policy bars coverage for their loss, and alternatively, that Acuity is entitled to judgment as a matter of law as to certain damages. Plaintiffs cross-move for partial summary judgment (R. 47), arguing that the "earth movement" exclusion does not bar coverage. For the reasons explained below, the Court grants Acuity's motion and denies plaintiffs' motion.

**Background**

**A.    Policy Insuring Plaintiffs' Property**

Acuity has insured plaintiffs' commercial property in Elk Grove, Illinois since January 1, 2010. R. 52 (Acuity's R. 56.1 Response) ¶¶ 1-2; R. 54 (Pls.' R. 56.1

1

Response) ¶ 4. Acuity issued plaintiffs what is called an "all risk" policy[1] covering "direct physical loss or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." R. 52 ¶ 5.

The policy contains a limitation regarding damage to a building's foundation, which states:

> Covered Property does not include: . . .
> g.    Foundations of building, structures, machinery or broilers if their foundation are below:
>     (1)    The lowest basement floor; or
>     (2)    The surface of the ground, if there is no basement.

R. 54 ¶ 5.

The policy also contains an "Earth Movement" exclusion providing:

> B.    EXCLUSIONS
> 1.    We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
> . . .
>     b.    Earth Movement
>     . . .
>     (4)    Earth sinking (other than sinkhole collapse), rising, or shifting including soil conditions which cause settling, cracking, or other disarrangement of foundations or other parts of realty. Soil Conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water underlying the ground surface.

R. 52 ¶ 6; R. 54 ¶ 5.

---

[1]    An "all risk" policy "creates a special type of coverage extending to risks not usually covered under other insurance, and recovery under an 'all risk' policy will, as a rule, be allowed for all fortuitous losses not resulting from misconduct or fraud, unless the policy contains a specific provision expressly excluding the loss from coverage." *Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 387 Ill. App. 3d 85, 109, 898 N.E.2d 215, 237 (1st Dist. 2008).

## B. Damage to Plaintiffs' Property

In 2013, plaintiffs excavated around their property to construct a detached storage addition. R. 52 ¶ 15; R. 54 ¶ 7. During the excavation process, plaintiffs discovered that the soil around the property contained "urban backfill," or manmade debris, such as concrete and asphalt. R. 52 ¶ 16; R. 54 ¶ 7. Plaintiffs retained a consultant to investigate this issue, and the consultant in turn hired Soil and Material Consultants ("SMC") to perform a geotechnical investigation. R. 52 ¶¶ 17-18. This investigation involved taking eight soil samples from the ground around the property at various depths. R. 52 ¶ 19; R. 54 ¶¶ 12-14.

Following the geotechnical investigation, an expert soil engineering consultant from SMC produced a report on which plaintiffs rely in this case. R. 52 ¶¶ 26-29. Acuity hired its own expert consultant to analyze the same core samples taken by SMC. R. 52 ¶¶ 33-36; R. 54 ¶¶ 21, 28.

The parties' experts agree on several key facts. They agree that the core samples contained a combination of soil naturally present and "fill soil," which is non-synthetic soil transported from a different location to level the height of the bottom of the building. R. 52 ¶¶ 24-25, 30; R. 54 ¶ 23. They agree that the building's foundation, drywall, doorframes, and windows are cracked and otherwise damaged. R. 52 ¶¶ 42, 44; R. 54 ¶ 8. And they agree that the presence of fill soil was a cause of the property damage. R. 52 ¶¶ 27, 41; R. 54 ¶¶ 24-26, 28.

Plaintiffs' expert specifically opined that "high moisture content/low-strength fill and natural soil conditions supporting the foundations are the cause of excessive

3

building settlement." R. 52 ¶ 29; R. 54 ¶ 24. He further opined "as to two likely causes of the settlement exhibited by the 'fill' soils: a. Additional load that 'pushes down' on the soil; and b. Consolidation due to improper compaction." R. 54 ¶ 26.

Acuity's expert specifically opined in his report that the most likely cause of damage was "differential soil settlement" "caused by a combination of building loads and non-uniform soil conditions and [ ] activated by localized concentrations of moisture from precipitation seeping into the ground." R. 52 ¶ 37; R. 54 ¶ 28. He testified at his deposition that the cause of the differential soil settlement was variability among the natural and fill soils. R. 54 ¶ 28. Acuity's expert further explained that "[t]he soil suction from tree roots during periods of drought may have also caused some of this damage." R. 52 ¶ 37; R. 59 (Pl.'s Resp. Additional Facts) ¶ 1. And although the core samples did not contain any "urban backfill," R. 52 ¶ 21; R. 54 ¶ 16, Acuity's expert could not rule out the possibility that urban backfill existed under the property. R. 52 ¶¶ 37, 48; R. 59 ¶ 1. Based on its expert's analysis, Acuity denied coverage. R. 54 ¶ 6.

## C. The Current Lawsuit

Plaintiffs first sued Acuity in Illinois state court challenging Acuity's denial of coverage. Acuity removed the case to federal court based on diversity jurisdiction. R. 1; *see also* R. 54 ¶¶ 1-3 (plaintiffs are Illinois companies and Acuity is a Wisconsin company); R. 1-2 (sworn proof of $734,779 loss). Plaintiffs' two-count complaint seeks a declaratory judgment regarding coverage (Count I) and alleges breach of contract (Count II). R. 1-1.

4

Before discovery closed, Acuity moved for summary judgment based on a policy provision insuring plaintiffs against "loss or damage commencing during the policy period." R. 29 ¶ 5. Acuity argued that plaintiffs could not establish that the loss "commenc[ed]" during the policy period. The Court rejected that argument, finding the term "commencing" ambiguous and finding a question of fact as to whether any of the damage "commenced" during the policy period. R. 34.

Discovery has now closed, and the parties have cross-moved for summary judgment on the issue of whether the policy's earth movement exclusion bars coverage for plaintiffs' loss. In addition, Acuity moves for partial summary judgment with respect to certain damages under the policy's foundation limitation.

**Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not

return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the parties file cross-motions for summary judgment, the Court applies this standard to each motion separately to determine whether there is a genuine dispute of material fact and whether judgment should be entered as a matter of law. *Marcatante v. City of Chicago,* 657 F.3d 433, 438-39 (7th Cir. 2011). In ruling on each cross-motion for summary judgment, the Court draws inferences in favor of the party against whom the motion under consideration is made. *Siliven v. Ind. Dep't of Child Servs.*, 635 F.3d 921, 925 (7th Cir. 2011).

## Analysis

### I. Earth Movement Exclusion

The parties cross-move for summary judgment on the issue of whether the earth movement exclusion in plaintiffs' insurance policy bars coverage for their loss. When a federal court exercises diversity jurisdiction, the "ultimate responsibility of the district court is to apply the law of the state in which the court sits with respect to substantive matters." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 633 (7th Cir. 2002). Therefore, as both parties agree, this Court applies Illinois law to interpret plaintiffs' insurance policy.

Under Illinois law, the interpretation of an insurance policy is a question of law properly decided on summary judgment. *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 818-19 (7th Cir. 2008). "A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of

6

the parties as expressed by the language of the policy." *Id.* at 819. "It is the insurer's burden to affirmatively demonstrate the applicability of an exclusion." *Pekin Ins. Co. v. Miller*, 367 Ill. App. 3d 263, 267, 854 N.E.2d 693, 697 (1st Dist. 2006). "Exclusion provisions that limit or exclude coverage must be construed liberally in favor of the insured and against the insurer." *Id.* But "[w]here the terms of an insurance policy are clear and unambiguous, they must be applied as written," and "a court will not search for ambiguity where there is none." *BASF*, 522 F.3d at 819.

The earth movement exclusion provides that Acuity will not pay for damage "caused directly or indirectly by any of the following[:] . . . soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty." R. 52 ¶ 6. The parties' experts agree on several key facts relevant to this exclusion. They agree that conditions in the soil are a cause of the damage. R. 52 ¶ 29 (plaintiffs' expert opined that "high moisture content/low-strength fill and natural soil conditions supporting the foundations are the cause of the excessive building settlement"); R. 52 ¶ 37 (Acuity's expert opined that "a combination of building loads and non-uniform soil conditions and activated by localized concentrations of moisture" caused "differential soil settlement"). They specifically agree that the presence of fill soil is a cause of the damage. R. 52 ¶¶ 27, 41; R. 54 ¶¶ 24-26, 28. And they agree that these conditions resulted in "settlement," R. 52 ¶ 29; R. 52 ¶ 37, as well as cracking of the foundation and other parts of the property. R. 52 ¶¶ 42, 44; R. 54 ¶ 8. These facts alone seem to fit plaintiffs' damage within the plain language of the earth movement exclusion. *See* R. 52 ¶ 6 ("soil conditions

which cause settling, cracking or other disarrangement of foundations or other parts of realty").

Plaintiffs nevertheless contend that the exclusion does not apply for two reasons. First, they say the exclusion does not apply to soil conditions resulting from human action. Second, they say that the exclusion does not apply because there are several possible causes of loss, and not all of those causes are specifically excluded. The Court addresses each argument in turn.

A. **Human Action**

Acuity does not contest, for purposes of its motion, that "human action (the placement of fill soil on the site)" was "a cause of damage in this case." R. 44 at 4. The central disagreement among the parties is thus a question of law: whether the undisputed involvement of human action in creating the soil conditions at issue means that the earth movement exclusion does not apply. In support of their position, plaintiffs rely primarily on *Mattis v. State Farm Fire & Cas. Co.*, 118 Ill. App. 3d 612, 454 N.E.2d 1156 (5th Dist. 1983), and *Nautilus Ins. Co. v. Vuk Builders, Inc.*, 406 F. Supp. 2d 899 (N.D. Ill. 2005). In both cases, the courts analyzed earth movement exclusions and found them ambiguous. But the exclusions in *Mattis* and *Vuk* differed significantly from the exclusion in this case.

The policy in *Mattis* excluded "earth movement, including but not limited to earthquake, volcanic eruption, landslide, mudflow, earth sinking, rising or shifting." 454 N.E.2d at 1160. The *Mattis* court applied the principle of *ejusdem generis* "to limit the definition of 'earth movement' to causes of the same class as earthquake

8

and landslide." *Id*. It found that "settlement and consolidation of . . . backfill material" did not fall into the same class as earthquakes and landslides, and therefore determined "that the earth movement clause does not provide a basis for denial of coverage." *Id*.

The policy in *Vuk* similarly excluded "earth movement, including but not limited to landslide, mud flow, earth sinking, rising or shifting." 406 F. Supp. 2d at 902. Relying on *Mattis*, the *Vuk* court found this exclusion ambiguous in that it "define[d] the *type* of earth movement, not the *cause*," and all of its examples "could be construed to exclude coverage for natural causes" or "could be construed to exclude coverage for man-made events." *Id*. at 904. The court resolved the ambiguity against the insurer and found that "earth movement due to man-made causes alleged in the underlying suits—negligence in excavating and bracing the property—is not included in the exclusion." *Id*. at 904-05.

Crucially, however, the earth movement exclusions in *Mattis* and *Vuk* did not list any events unambiguously caused by human action as examples of "earth movement." *See Mattis*, 454 N.E.2d at 1160 ("earthquake, volcanic eruption, landslide, mudflow, earth sinking, rising or shifting"); *Vuk*, 406 F. Supp. 2d at 902 ("landslide, mud flow, earth sinking, rising or shifting"). The policy in this case, by contrast, specifically refers to "Soil Conditions" as earth movement, and it lists an event unambiguously caused by human action as an example of "Soil Conditions." Namely, it defines "Soil Conditions" to "include contraction, expansion, freezing,

9

thawing, erosion, *improperly compacted soil* and the action of water underlying the ground surface." R. 52 ¶ 6 (emphasis added).

As other courts have found, "improperly compacted soil" necessarily implicates human action. *See Mulhern v. Philadelphia Indem. Ins. Co.*, 802 F. Supp. 2d 317, 322 (D. Mass. 2011) ("'[I]mproperly compacted soil' is clearly a manmade condition."); *Ruede v. City of Florence*, 231 Or. App. 435, 442, 220 P.3d 113, 117 (2009) ("improperly compacted soil" is a "human-created cause"). Interpreting earth movement exclusions identical to the one in this case, both the *Mulhern* and *Ruede* courts found that they unambiguously covered soil conditions caused by human action. *See Mulhern*, 802 F. Supp. 2d at 322-23 (rejecting argument that "'Earth Movements' exclusion should be read to bar only coverage of naturally occurring earth movements and not man-made events" because "'[i]mproperly compacted soil' is clearly a manmade condition, which the plain language of the Policy excludes from coverage," and "[t]herefore, the Policy is not ambiguous in this respect"); *Ruede*, 220 P.3d at 117 (rejecting argument that "the exclusion may fairly be read to apply only to earth movement caused by natural events, and not to human-caused earth movement, such as the culvert defect that caused the sifting of sand under the slab in this case," because it could not "be squared with the text of the exclusion, which lists at least one human-created cause—'improperly compacted soil'—among the excluded 'soil conditions'"). This Court finds these courts' reasoning persuasive.

Plaintiffs contend that "improperly compacted soil" does not necessarily implicate human action. They say that because the other "Soil Conditions" examples

10

do not implicate human action, "it must also necessarily follow under the principle of *ejusdem generis* that 'improperly compacted soil' as referenced in Acuity's exclusion must also be a naturally occurring cause of loss." R. 56 at 5. But this is an improper application of *ejusdem generis*. The *ejusdem generis* principle provides: "When a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as . . . 'others such like' the named persons or things." *City of Chicago v. Elm State Property LLC*, 2016 IL App (1st) 152552, ¶ 23, 69 N.E.2d 390, 397. As Acuity correctly explains, plaintiffs' argument attempts to use *ejusdem generis* to limit or change the meaning of a condition expressly listed ("improperly compacted soil")—not to interpret "the class of unarticulated persons or things" (*id.*). The *ejusdem generis* principle does not allow this Court to change the meaning of a condition expressly listed so it matches the other conditions expressly listed.

Rather, as long as "'the terms of an insurance policy are clear and unambiguous, they must be given their plain and ordinary meaning and enforced as written, unless to do so would violate public policy.'" *Berg v. New York Life Ins. Co.*, 831 F.3d 426, 429 (7th Cir. 2016) (quoting *DeSaga v. W. Bend Mut. Ins. Co.*, 391 Ill. App. 3d 1062, 331, 910 N.E.2d 159, 163 (3d Dist. 2009)). And the term "improperly compacted soil" is plain and unambiguous—it requires human action.[2] Naturally

---

[2] The Seventh Circuit further made clear in *Berg* that under Illinois law, "[i]n determining whether a provision is ambiguous, we read the policy in light of 'the insured's reasonable expectations and the policy's intended coverage.'" 831 F.3d at 429 (quoting *Gen. Star Indemn. Co. v. Lake Bluff Sch. Dist. No. 65*, 354 Ill. App. 3d 118, 819 N.E.2d 784, 793 (2d Dist. 2004)). Plaintiffs say they had a reasonable

11

occurring conditions cannot logically be described as "proper" or "improper"—they simply happen or exist. Unlike the exclusions in *Mattis* and *Vuk*, the earth movement exclusion in plaintiffs' policy thus unambiguously includes both naturally occurring soil conditions and soil conditions resulting from human action.

Applying the principle of *ejusdem generis* in its intended manner, the Court finds that a condition that is an undisputed cause of the damage in this case—the presence of fill soil—is "of the same class" (*Mattis*, 454 N.E.2d at 1160) as the listed examples of soil conditions despite the involvement of human action in moving the fill soil to its current location. The conclusion that the presence of fill soil is of the same class as "improperly compacted soil" is further supported by an admission of plaintiffs. Plaintiffs admit that according to their expert, a "likely cause[ ] of the settlement exhibited by the 'fill' soils" was "[c]onsolidation due to improper compaction." R. 54 ¶ 26. Thus, plaintiffs' own expert has opined that a *listed condition*—improperly compacted soil—was a "likely cause[ ] of the settlement exhibited." *Id.* At the very least, this admission supports that the presence of fill soil

---

expectation of broad coverage in light of the "all risk" policy they purchased, and that this expectation should be accounted for in determining whether the earth movement exclusion is ambiguous. But again, an "all risk" policy covers "all fortuitous losses . . . *unless the policy contains a specific provision expressly excluding the loss from coverage.*" *Cincinnati Ins. Co.*, 898 N.E.2d at 237 (emphasis added). The policy here unambiguously excludes damage resulting from earth movement including soil conditions—whether naturally occurring or resulting from human action. The *Berg* court made clear that "[a] court should not 'strain to find an ambiguity where none exists.'" 831 F.3d at 429 (quoting *Founders Ins. Co. v. Munoz*, 237 Ill.2d 424, 433, 930 N.E.2d 999, 1004 (2010)). The unambiguous terms of plaintiffs' policy "must be enforced as written," and the Court cannot "rewrite a contract to provide a better bargain to suit one of the parties." *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 175, 682 N.E.2d 118, 122 (1st Dist. 2004).

falls within the same class as the listed conditions. *Compare High St. Lofts Condo. Ass'n v. Am. Family Mut. Ins. Co.*, 821 F. Supp. 2d 1235, 1243 (D. Colo. 2011) (finding fact issue for jury as to whether the building's failure to properly absorb vibration from nearby construction work was due to improperly compacted soil).

In sum, the Court finds that the earth movement exclusion in plaintiffs' policy unambiguously includes soil conditions resulting from human action. And the Court finds that the presence of fill soil resulting from human action—an undisputed cause of damage in this case—falls within the same class as listed soil conditions excluded under the policy.

**B. Other Causes**

Plaintiffs further rely on *Mattis* for the proposition that if any non-excluded cause contributed to their loss—a possibility they claim Acuity has not eliminated—then Acuity cannot meet its burden. A second, alternative basis for the *Mattis* court's holding that the earth movement exclusion did not apply was the fact that a non-excluded cause—"defective design and construction"—undisputedly contributed to the loss in that case. 454 N.E.2d at 1160-61. The *Mattis* court explained that "[w]here a policy expressly insured against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause." *Id.* at 1161.

Plaintiffs claim that here, as in *Mattis*, "there are multiple potential causes of loss"—"one that occurs naturally and one that is a result of non-natural activities, *i.e.*, the placement of fill soil and the failure to properly compact the fill soil." R. 49

13

at 7. Plaintiffs say that because "man-made causes of loss are not expressly excluded causes of loss under the Acuity 'Earth Movement' exclusion, the exclusion does not provide a basis for denial of coverage." *Id.* But this Court has already found that both "placement of fill soil" and "the failure to properly compact the fill soil" fall within the exclusion, regardless of whether the failure to properly compact the soil is a manmade cause. Plaintiffs and their expert have not identified any non-excluded cause of loss in this case as there was in *Mattis*.

And even if other causes did contribute to plaintiffs' loss—such as the building loads and tree roots identified by Acuity's expert, or the possibility of urban backfill under the building that Acuity's expert could not rule out—there is a crucial difference between the causation language in Acuity's policy and the policy in *Mattis*. Unlike the policy in *Mattis*, Acuity's policy contains what is called an anticoncurrent causation clause that applies to the earth movement exclusion. That clause states: "We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss." R. 52 ¶ 6.

The Illinois appellate court in *Bozek v. Erie Ins. Group*, 2015 IL App (2d) 150155, ¶ 34, 46 N.E.2d 362, 333, recently held as a matter of first impression that an anticoncurrent causation clause nearly identical to this one precludes coverage when both a covered and an excluded cause combine to cause damage. *See also id.* at 325 (analyzing clause providing: "We do not pay for loss resulting directly or

14

indirectly from any of the following, even if other events or happenings contributed concurrently, or in sequence to, the loss."). The *Bozek* court explained:

> On the extreme of specifying narrow coverage, many policies include anticoncurrent-causation clauses. The purpose of anticoncurrent-causation clauses is to avoid application of the general rule [*i.e.*, the rule expressed in *Mattis*] that there is coverage so long as the efficient or dominant cause is covered. When an anticoncurrent-causation clause can be applied to the facts underlying the claim, there is no coverage even if one contributing cause is an excluded event.

*Id.* at 331.

Here, as in *Bozek*, the only question that matters in light of the anticoncurrent causation clause is whether an excluded cause was "one contributing cause" of the loss at issue. And the Court has already found that an excluded cause (a soil condition qualifying as earth movement) was a contributing cause of plaintiffs' loss. Neither party claims—and the undisputed facts do not support—that any other cause could possibly be the exclusive cause of loss. *Compare Mulhern*, 802 F. Supp. 2d at 323 (in case involving anticoncurrent causation clause, finding fact issue for jury on the issue of whether "improperly compacted soil was the cause of the damage or whether the vibrations emanating from the pile driving were the *exclusive* cause") (emphasis added). Nor do plaintiffs allege "perils act[ing] at different times, causing different damage, resulting in *separate losses*." *See Bozek*, 46 N.E.2d at 332 (distinguishing this situation as one where an anticoncurrent causation clause would not bar coverage). The Court therefore finds that Acuity has met its burden of demonstrating that the earth movement exclusion precludes coverage of plaintiffs' loss, regardless of any other potentially contributing causes.

## II. Foundation Limitation

Because the Court has found that the earth movement exclusion unambiguously precludes coverage in this case, it does not reach Acuity's alternative argument for partial summary judgment as to the claimed damages for "cracks in the foundation wall" (R. 1-1 ¶ 17) under the policy's foundation limitation.

## Conclusion

The Court grants Acuity's motion for summary judgment based on its finding that the earth movement exclusion bars coverage (R. 43), which moots Acuity's further argument for partial summary judgment as to damages. The Court denies plaintiffs' cross-motion for partial summary judgment (R. 47).

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 15, 2018